UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TIFFANY CORRINE VAZQUEZ,

     Plaintiff,

   v.                                       18-CV-242
                                             Decision & Order
ANDREW SAUL, Comm'r of Soc. Sec.,

     Defendant.

_____

On February 14, 2018, the plaintiff, Tiffany Vazquez, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On October 10, 2018, Vazquez moved for judgment on the pleadings, Docket Item 12; on December 7, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 15; and on December 28, 2018, Vazquez replied, Docket Item 16.

For the reasons stated below, this Court grants Vazquez's motion in part and denies the Commissioner's cross-motion.

## **BACKGROUND**

### I.    PROCEDURAL HISTORY

On April 8, 2014, Vazquez applied for Supplemental Security Income benefits. Docket Item 8 at 48. She claimed that she had been disabled since March 5, 2014, due to limited movement in her left arm, bilateral heel spurs, faciitis in her right ankle,

constant back pain, severe depression, arthritis, seizures, panic attacks, and severe anxiety. *Id.* at 48, 52.

On September 5, 2014, Vazquez received notice that her application was denied because she was not disabled under the Act. *Id.* at 48. She requested a hearing before an administrative law judge ("ALJ"), *id.*, which was held on November 18, 2016, *id*. A subsequent hearing was held on January 5, 2017, so that an impartial vocational expert could testify. *Id.* The ALJ then issued a decision on March 13, 2017, confirming the finding that Vazquez was not disabled. *Id.* at 62. Vazquez appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 5.

## II. THE ALJ'S DECISION

In denying Vazquez's application, the ALJ evaluated Vazquez's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations,

2

the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(4)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, at step one, the ALJ found that Vazquez had not engaged in substantial gainful activity since her alleged disability onset date. Docket Item 8 at 50. At step two, the ALJ determined that she had the following severe impairments: bilateral plantar faciitis, bilateral venous insufficiency, chronic lower back pain, obesity, post-traumatic stress disorder, and depression. *Id.* At step three, the ALJ found that none of

3

Vazquez's impairments, either alone or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 51. At step four, the ALJ determined that Vazquez had the RFC to:

> perform light work as defined in 20 C.F.R. 404.1567(b) except she was limited to simple routine tasks and simple work related decisions. She could tolerate occasional contact with supervisors, coworkers, and the public.

*Id.* at 54. Finally, at step five, the ALJ found that jobs exist in significant numbers in the national economy that Vazquez can perform with her RFC, such as office helper or inspector. *Id.* at 60-61.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an

4

unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I. ALLEGATIONS

Vazquez objects to the ALJ's RFC determination. Docket Item 12-1 at 17. She specifically argues that the ALJ erred both by relying on a stale opinion from a consultative examiner and by improperly incorporating an opinion on her mental limitations into her RFC. *Id.* This Court agrees that the ALJ's reliance on a stale medical opinion requires remand.[1]

### II. ANALYSIS

Vazquez argues that the ALJ erred by giving "great weight" to the opinion of Donna Miller, D.O., when Dr. Miller's opinion was "stale, as it was performed before Plaintiff had foot surgery, it was before the continued deterioration of Plaintiff's conditions, and it was before Plaintiff began experiencing difficulties from bilateral carpal tunnel syndrome, which was later diagnosed and treated." Docket Item 12-1 at 17. According to Vazquez, that error warrants remand. This Court agrees.

Dr. Miller saw Vazquez on June 17, 2014, for a consultative examination. Docket Item 8 at 316. She opined that Vazquez had only "mild limitations with prolonged standing, walking, bending, and lifting." *Id.* at 319. Nearly three years later, in March

---

[1] Because the "remaining issues . . . may be affected by the ALJ's treatment of this case on remand," this Court does not reach them. *Watkins v. Barnhart*, 350 F.2d 1297, 1299 (10th Cir. 2003).

5

2017, the ALJ gave that opinion "great weight" because it was "consistent with the evidence of record as a whole showing minimal objective findings and treatment for back pain and intermittent gait difficulties with flares in pain that were precipitated by superficial injury, but otherwise stable symptoms." *Id.* at 57.

In the meantime, however, Vazquez's condition changed significantly. For example, she repeatedly complained of foot pain to James Burrano, D.P.M., her treating podiatrist, *id.* at 324, 484, 489, 497, 499, 506, and 508; and she had surgery on her foot, *id.* at 518. In addition, Vazquez was diagnosed with carpal tunnel syndrome. *Id.* at 448. Vazquez argues that these developments made Dr. Miller's opinion stale and thus not substantial evidence upon which the ALJ could rely in formulating her RFC.

Although "[a] stale medical opinion does not constitute substantial evidence to support an ALJ's findings," a "gap of time between when an opinion is rendered and the disability hearing and decision does not automatically invalidate that opinion." *Majdandzic v. Comm'r of Soc. Sec.*, No. 17-CV-1172-FPG, 2018 WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018). For a medical opinion to be stale, not only must there be a significant period of time between the date of the opinion and the hearing date, there also must be subsequent treatment notes "indicat[ing] a claimant's condition has deteriorated" over that period. *Whitehurst v. Berryhill*, No. 1:16-CV-01005-MAT, 2018 WL 3868721, at *4, *5 (W.D.N.Y. Aug. 14, 2018). In other words, the "mere passage of time does not render an opinion stale," *id.*, but "significant developments" in an individual's medical history after the examination might. *Davis v. Berryhill*, 2018 WL 1250019, at *3 (W.D.N.Y. Mar. 11, 2018).

While Vazquez had foot problems even before she saw Dr. Miller, her subsequent surgery renders Dr. Miller's opinion stale with respect to Vazquez's foot ailments. *See Pagano v. Comm'r of Soc. Sec.*, 2017 WL 4276653, at *5 (W.D.N.Y. Sep. 27, 2017) ("A stale medical opinion, like one that is rendered before a surgery, is not substantial evidence to support an ALJ's finding."); *Girolamo v. Colvin*, 2014 WL 2207993, at *7-8 (W.D.N.Y. May 28, 2014) (ALJ erred by giving great weight to medical opinions rendered before the claimant's second surgery).

But even if the foot surgery were not significant enough to make Dr. Miller's opinion stale, the opinion is clearly stale with regard to Vazquez's bilateral carpal tunnel syndrome. On September 16, 2016, more than two years after Vazquez saw Dr. Miller, Carrie Ludwig, F.N.P., noted Vazquez's "bilateral wrist pain" and decreased range of motion. *Id.* at 448. Ms. Ludwig diagnosed Vazquez with carpal tunnel syndrome and referred her to an orthopedist. *Id.*[2] In her hearing testimony, Vazquez testified that she experienced wrist pain so severe that it interfered with her ability to hold a cane. *Id.* at 105. Third party statements submitted to the ALJ also noted that Vazquez's hands "are really bad [and that] she can not hold anything because then she will end up dropping it." *Id.* at 295. In contrast, Dr. Miller did not opine about any limitations in Vazquez's

---

[2] The Commissioner suggests that because the September 2016 "treatment note . . . states that Plaintiff had already sought treatment for this hand condition," it was a "longstanding concern"—thus raising the possibility that carpal tunnel syndrome might have been present when Dr. Miller examined Vazquez. *See* Docket Item 15-1. Of course, that is nothing more than rank speculation. And given that Vazquez might well have "sought treatment" in the two years and three months between Dr. Miller's exam and the diagnosis of carpal tunnel syndrome, it is illogical speculation. In fact, Vazquez did seek treatment during that period. The September 2016 treatment note refers to an EMG study on March 31, 2016, as related to carpal tunnel syndrome. But that too was well after Vazquez saw Dr. Miller.

hand and finger dexterity; instead, Dr. Miller found "5/5" bilateral grip strength. *Id.* at 319. So there was a significant deterioration in Vazquez's condition after Dr. Miller's exam. And Ms. Ludwig's diagnosis and referral for treatment of carpal tunnel syndrome renders Dr. Miller's opinion stale regarding possible limitations due to that ailment.

In formulating a claimant's RFC, the ALJ must "confront the evidence in [the plaintiff's] favor and explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). Here, the ALJ glossed over Vazquez's diagnosis of carpal tunnel syndrome, *see* Docket Item 8 at 59 ("claimant has also received relatively minimal treatment for the bulk of her complaints aside from foot pain"), and assigned great weight to Dr. Miller's opinion that she had only mild limitations, *id.* at 57. But Dr. Miller provided that opinion well before Vazquez was diagnosed with carpal tunnel syndrome, and a stale medical opinion such as this one does not support an ALJ's finding. *See, e.g.*, *Pagano*, 2017 WL 4276653, at *5. Moreover, Vazquez's foot surgery after Dr. Miller's exam further supports the conclusion that Dr. Miller's opinion was stale. Therefore, the ALJ erred in relying on a stale opinion, the ALJ's decision was not based on substantial evidence, and the matter is remanded so that the ALJ can address what limitations, if any, result from Vazquez's carpal tunnel syndrome and foot problems.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 15, is DENIED, and Vazquez's motion for judgment on the pleadings, Docket Item 12, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: August 16, 2019
Buffalo, New York

                                          *s/ Lawrence J. Vilardo*
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE